UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMES D. WILKS, )
                Plaintiff, )
       v. )
KING COUNTY, *et al.*, )
                Defendants. )
_____)

CASE NO. C07-1720-RSM-JPD

REPORT AND RECOMMENDATION

Plaintiff James Wilks is a county prisoner who is incarcerated at the King County Correctional Facility ("KCCF") in Seattle, Washington. He brings this civil rights action under 42 U.S.C. § 1983 to allege violations of his constitutional rights by a number of KCCF employees.[1] The only relief requested by plaintiff in his complaint is that defendants be brought to trial for violating his civil rights. Defendants have filed a motion for partial summary judgment. Plaintiff, despite having been advised of the summary judgment requirements pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), has filed no response to defendants' motion. Following a careful review of defendants' motion, and the balance of the record, this Court concludes that defendants' motion for

---

[1] Plaintiff identified fourteen defendants in his complaint. However, King County and one individual defendant, Officer L. Jones, were dismissed prior to service of the complaint. One of the remaining defendants, identified in the complaint as "Nurse Sue" has not returned a waiver of service of summons. Defendants assert in their pending summary judgment motion that they were unable to identify "Nurse Sue" from the information provided by plaintiff in his complaint. (Dkt. No. 24 at 9.) Because "Nurse Sue" has not been served, she is not deemed a defendant in this action.

REPORT AND RECOMMENDATION
PAGE - 1

partial summary judgment should be granted.

## DISCUSSION

Plaintiff has been incarcerated at KCCF on numerous occasions. The complaint now before the Court covers two separate periods of incarceration. Plaintiff asserts a single claim arising out of his release from KCCF on April 14, 2007; *i.e.*, that he was improperly denied access to storage lockers in the lobby of the jail upon his release. Plaintiff's remaining claims arise out of his most recent period of incarceration at KCCF which began on August 26, 2007. Those claims fall into two main categories; *i.e.*, First Amendment retaliation claims and Eighth Amendment "cruel and unusual punishment" claims. Plaintiff also arguably alleges claims regarding the deprivation of personal property. Defendants, by way of their motion for partial summary judgment, seek dismissal of all of plaintiff's claims except those alleging use of excessive force.

### Summary Judgment Standard

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there exists "no genuine issue as to any material fact" such that "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is a fact relevant to the outcome of the pending action. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Genuine issues of material fact are those for which the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Id*.

In response to a properly supported summary judgment motion, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts demonstrating a genuine issue of fact for trial and produce evidence sufficient to establish the existence of the elements essential to his case. *See* Fed. R. Civ. P. 56(e). A mere scintilla of evidence is insufficient to create a factual dispute. *See Anderson*, 477 U.S. at 252. In ruling on summary judgment, the court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is

1 | a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994).

## Section 1983 Standard

In order to sustain a cause of action under 42 U.S.C. §1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

### 1. Use of Locker - Sergeant Hansen

Plaintiff complains that defendant Hansen refused to allow him to use storage lockers located in the lobby of the jail following his release from custody on April 14, 2007. (Dkt. No. 4 at 9-10.) He claims that he had 150 pounds of legal documents in two large boxes which he needed to store while he went to cash a check. (*Id*. at 10.) Defendants argue that defendant Hansen was under no obligation to provide plaintiff with storage for his personal belongings following his release from custody. Defendants further argue that, even assuming such an obligation existed, plaintiff does not explain what possible damage could have resulted or why it was necessary to cash the check before taking his belongings from the jail. Plaintiff fails to demonstrate that defendant Hansen's refusal to allow him to use the storage lockers violated federal constitutional concerns. Accordingly, defendant Hansen is entitled to summary judgment with respect to this claim.

### 2. Cell Searches - Sergeants Hansen and Gailfus

Plaintiff alleges that on September 26, 2007, defendant Hansen searched his cell and removed three magazines, two books, and a ream of paper. (Dkt. No. 4 at 10-11.) Plaintiff also alleges that on

September 28, 2007, defendant Gailfus entered his cell and removed soap bars, newspaper articles, toothpaste, a toothbrush, and deodorant.[2] (*Id*. at 29.) Plaintiff appears to assert two claims arising out of the cell searches; that he was unconstitutionally deprived of his personal property and that the removal of items from his cell was retaliatory in nature. The Court will address each claim in turn.

The Due Process Clause provides that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. Const. Amend. V. However, where a state employee's random, unauthorized act deprives an individual of property, either negligently or intentionally, the individual is relegated to his state post-deprivation process, so long as the state provides an adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 540-41 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). Washington State provides a post-deprivation remedy for the alleged tortious conduct of city and county employees' under RCW 4.96. Plaintiff does not allege any due process inadequacy in the tort remedy provided under RCW 4.96. Thus, plaintiff has not alleged any viable claim for relief with respect to the loss of his personal property.

In order to prevail on a retaliation claim under § 1983, plaintiff must show that he was retaliated against for exercising his constitutional rights, that the retaliatory action chilled the exercise of his First Amendment rights, and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000); *Barnett v. Centoni.* 31 F.3d 813, 816 (9th Cir. 1994). In order to survive summary judgment, the plaintiff bears the burden of showing that there was no legitimate penological objective to defendants' actions. *See*

---

[2] Defendant Gailfus, in a declaration submitted in support of defendants' summary judgment motion, concedes that she searched plaintiff's cell for contraband on September 28, 2007, but states that she removed only magazine articles which had been removed from magazines and were deemed contraband because they were defaced county property.

REPORT AND RECOMMENDATION
PAGE - 4

*Pratt v. Rowland,* 65 F.3d 802, 806 (9th Cir. 1995). The Court evaluates a retaliation claim in light of the deference accorded prison officials. *Id*. at 807.

Defendants argue that plaintiff has not met the test for establishing a retaliation claim related to the removal of items from his cell because he does not identify any action taken against him because of any protected conduct and because the action taken; *i.e.*, removing contraband, reasonably advanced a legitimate correctional goal. Defendants state that jail rules prohibit inmates from having too many items in their cells or from defacing County property. These rules, according to defendants, serve the legitimate correctional goal of providing a hygienic environment in the jail, reducing the danger of fire, and reducing the number of places an inmate can hide contraband.

While plaintiff suggests in his complaint that defendant Hansen's actions in searching and removing items from his cell was motivated by his filing of previous lawsuits against King County and its employees, plaintiff offers no evidence that the filing of previous lawsuits was in any way related to the decisions to search his cell and to remove items deemed to be contraband. Moreover, plaintiff has not met his burden of proving the absence of legitimate correctional goals for the conduct of which he complains. *See Pratt*, 65 F.3d at 806 ("The plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains.") Accordingly, defendants Hansen and Gailfus are entitled to summary judgment with respect to any claim of retaliation based upon their searches of plaintiff's cell and the removal of certain property found therein.

3. <u>Dinner Meals - Officers Anderson and Lamond and Sergeant Gailfus</u>

Plaintiff alleges that on September 5, 2007, defendants Anderson and Lamond refused to give him a dinner tray. (Dkt. No. 4 at 21-24.) Plaintiff further alleges that defendant Gailfus, on September 13, 2007, ordered corrections officers not to give plaintiff a dinner tray because of feces and urine on the floor outside his cell, and, as a result, plaintiff did not receive his dinner meal until

almost midnight when a third-shift officer provided him a sack lunch. (*Id*. at 30.) Plaintiff argues that the conduct of defendants Anderson and Lamond constituted cruel and unusual punishment under the Eighth Amendment. He further argues that the conduct of defendants Anderson, Lamond, and Gailfus was retaliatory in nature.

Defendants argue that, to the extent plaintiff intends to claim he was denied his constitutional right to an adequate diet, the claim is false and should be dismissed from the complaint. Defendants further argue that, to the extent plaintiff alleges the withholding of dinner meals was retaliatory in nature, the claim fails because plaintiff does not allege that meals were withheld or delayed because he engaged in any constitutionally protected conduct.

While plaintiff alleges that defendants' conduct violated his rights under the Eighth Amendment, because he is a pretrial detainee his rights derive from the Due Process Clause of the Fourteenth Amendment and not from the Eighth Amendment's prohibition against cruel and unusual punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). The test for identifying unconstitutional punishment at the pretrial stage of a criminal proceeding requires a court to examine "whether there was an express intent to punish, or 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'" *Demery v. Arpaio*, 378 F.3d 1020, 1028 (9th Cir. 2004) (quoting *Bell*, 441 U.S. at 538). "For a particular governmental action to constitute punishment, (1) that action must cause the detainee to suffer some harm or 'disability,' and (2) the purpose of the governmental action must be to punish the detainee." *Demery*, 378 F.3d at 1029. Further, "to constitute punishment, the harm or disability caused by the government's action must either significantly exceed, or be independent of, the inherent discomforts of confinement." *Id.* at 1030.

"[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted

prisoners and pretrial detainees." *Bell*, 441 U.S. at 546. *Accord Jones*, 393 F.3d at 932 ("Legitimate, non-punitive government interests include ensuring a detainee's presence at trial, maintaining jail security, and effective management of a detention facility.") Moreover, corrections administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell*, 441 U.S. at 547.

Defendant Lamond states in his declaration submitted in support of defendants' summary judgment motion that meal trays were brought to plaintiff's unit at about 5:10 p.m. on September 5, 2007. (Dkt. No. 29 at 2.) However, because plaintiff had been throwing feces and urine under his cell door that day, and because he was threatening to throw feces at staff at dinner time, defendants Lamond and Anderson could not open plaintiff's pass through to provide him a dinner tray. (*Id.*) According to defendant Lamond, plaintiff began throwing feces and urine under his door again later that evening and, as a result, they could not provide him with a replacement meal. (*Id.*)

Defendant Gailfus, in her declaration, addresses plaintiff's allegations that his evening meal was delayed on September 13, 2007. (*See* Dkt. No. 26.) Defendant Gailfus states that during the evening of September 13, 2007, plaintiff threw urine and feces out of his door and, as a result, staff could not safely approach plaintiff during the normal dinnertime. (*See id.* at 2-3.) Defendant Gailfus instructed officers to provide plaintiff with a sack meal after the mess was cleaned up. (*Id.*) Plaintiff was given his meal at approximately 10:15 p.m.. (*Id.*)

Plaintiff offers no evidence that he suffered any substantial harm as a result of the deprivation of his dinner meal by defendants Anderson and Lamond on September 5, 2007. And, there is ample evidence in the record, none of which is refuted by plaintiff, that the deprivation of the meal in question was necessitated to ensure the safety of staff. Plaintiff has not established a due process violation arising out of the deprivation of his dinner meal on September 5, 2007. Defendants

REPORT AND RECOMMENDATION
PAGE - 7

Anderson and Lamond are therefore entitled to summary judgment with respect to plaintiff's claim of cruel and unusual punishment.

Defendants are also entitled to summary judgment with respect to plaintiff's retaliation claims arising out of the withholding of meals on September 5, 2007 and September 13, 2007. Nowhere in his complaint does plaintiff allege that defendants Anderson, Lamond, or Gailfus withheld his dinner meals in response to his exercise of constitutionally protected rights. And, while plaintiff alleges that the actions of defendant Gailfus did not advance legitimate penological goals, the record amply supports the conclusion that defendant Gailfus delayed plaintiff's dinner meal on September 13, 2007, because it was unsafe for officers to deliver the meal at the normal dinner time. Ensuring the safety of staff constitutes a legitimate correctional goal. Plaintiff has not met the test for establishing a retaliation claim against defendants Anderson, Lamond, and Gailfus related to the withholding of his dinner meals. Accordingly, these three defendants are entitled to summary judgment with respect to plaintiff's retaliation claims.

### 4. Denial of Shower Time - Officer Bolser

Plaintiff alleges that on September 4, 2007, he was denied his shower and his "hour out" because defendant Bolser had written in the shower log that plaintiff had refused his shower when, in fact, plaintiff had not refused. (Dkt. No. 4 at 25-26.) Though not entirely clear from the complaint, plaintiff appears to allege that defendant Bolser's conduct violated his right to be free from cruel and unusual punishment and was retaliatory in nature. (*See id.*) Defendant Bolser states in his declaration in support of defendants' summary judgment motion that he offered plaintiff an opportunity to come out of his cell and use the shower in the day room on September 4, 2007, and that plaintiff refused to come out. (Dkt. No. 25 at 2.) Defendant Bolser documented plaintiff's refusal in the shower log which is maintained for this purpose. (*Id.*) The shower log attached to defendant Bolser's declaration does, in fact, reflect that plaintiff refused his shower on September 4,

2007. (*Id*. at 3.) Plaintiff offers no evidence that this log is inaccurate.

However, even assuming defendant Bolser did inaccurately record in the shower log that plaintiff had refused his shower time on September 4, 2007, plaintiff offers no evidence that defendant Bolser did so with the intent to punish plaintiff or that, in fact, the denial of the shower for a single day caused plaintiff any substantial harm. Accordingly, this claim does not implicate due process concerns. Plaintiff also fails to produce any evidence demonstrating that defendant Bolser's alleged misconduct was undertaken in response to plaintiff's exercise of his constitutionally protected rights. Accordingly, defendant Bolser is entitled to summary judgment with respect to plaintiff's cruel and unusual punishment and retaliation claims.[3]

### 5. Emergency Intercom/Drinking and Toilet Water - Officer Colbert

Plaintiff asserts that on or about September 14, 2007, defendant Colbert refused to answer his emergency call button for a period of 72 hours, and that defendant Colbert refused to give plaintiff drinking water or a toilet flush.[4] (Dkt. No. 4 at 27.) Plaintiff asserts that defendant Colbert's actions constituted cruel and unusual punishment and were retaliatory in nature.

Defendants argue that defendant Colbert would have, at most, been working in plaintiff's housing unit eight hours a day and thus cannot be held responsible for the entire 72 hour period alleged by plaintiff. Defendants further argue, with respect to plaintiff's claims regarding the

---

[3] Plaintiff asserts in the same paragraph of his complaint in which he sets forth his claims against defendant Bolser that he was not allowed out of his cell for shower and exercise from August 26, 2007 to September 4, 2007. However, plaintiff does not assert that defendant Bolser was responsible for denying him a shower on any day except September 4, nor does plaintiff identify any other individuals who allegedly deprived him of showers during this nine day period. As plaintiff has not identified the individuals responsible for causing this alleged harm, plaintiff's complaint should be dismissed with respect to this claim as well.

[4] Plaintiff does not specify the 72 hour period he is referring to. Defendants address the period from September 12th through 14th because that is a period of time during which defendant Colbert was working in plaintiff's housing unit.

REPORT AND RECOMMENDATION
PAGE - 9

emergency call button, that there was no violation of plaintiff's constitutional rights because defendant Colbert was monitoring plaintiff's intercom calls and would have responded to those calls had there ever been a legitimate question or concern. As to plaintiff's claim regarding the deprivation of toilet water and drinking water, defendants argue that the claim should be dismissed because there is no credible evidence to support plaintiff's claim that he was deprived of drinking water and toilet water for 72 hours.

Defendant Colbert states in a declaration submitted in support of defendants' summary judgment motion that because plaintiff repeatedly used the intercom to either ask unnecessary questions or to yell at staff, he would listen to plaintiff's calls and would respond if plaintiff had a legitimate question or concern, but not if he was yelling or otherwise acting out. (Dkt. No. 31 at 1-2.) Defendant Colbert also states that because plaintiff would occasionally throw urine and feces out of his cell, and would flood his cell and the surrounding area with water, the running water in plaintiff's cell was turned off. (*Id*. at 2.) According to defendant Colbert, he would turn the water on in plaintiff's cell "every so often" so that plaintiff could flush the toilet and obtain drinking water. (*Id*.) Defendant Colbert states that he did this on September 12th, 13th, and 14th. (*Id*.) Attached to defendant Colbert's declaration are copies of the housing unit log book which, according to defendant

Colbert, reflect that other staff also turned on the water to allow plaintiff to flush the toilet and obtain drinking water. (*Id*. at 3-15.)

Plaintiff offers no evidence of his own to refute defendants' evidence which establishes that defendant Colbert responded to emergency intercom calls that were appropriate in nature. Plaintiff also offers no evidence to refute defendants's evidence that he was provided periodic access to drinking water and toilet water during the time in question. Finally, nothing in the record suggests that plaintiff suffered any substantial harm as a result of defendant Colbert's alleged failure to

REPORT AND RECOMMENDATION
PAGE - 10

respond to the intercom or as a result of the water being turned off in plaintiff's cell for a period of time. Accordingly, defendant Colbert is entitled to summary judgment with respect to plaintiff's cruel and unusual punishment claim.

With respect to plaintiff's claim of retaliatory conduct on the part of defendant Colbert, plaintiff contends that defendant Colbert failed to respond to plaintiff's emergency intercom and deprived him of water because plaintiff had filed a law suit against him which was then pending. However, the evidence in the record suggests that defendant Colbert's acts were undertaken in response to plaintiff's own misconduct which included abusing the intercom system and flooding his cell. Plaintiff fails to meet his burden of proving the absence of legitimate correctional goals for the conduct of which he complains. *See Pratt*, 65 F.3d at 806. Accordingly, defendant Colbert is entitled to summary judgment with respect to plaintiff's retaliation claim as well.

      6.      <u>Medication - Officers Braden and Mease</u>

Plaintiff alleges that on September 2, 2007, defendant Braden directed a member of the nursing staff to withhold plaintiff's medication and that the nurse complied. (Dkt. No. 4 at 35.) Plaintiff contends that defendant Braden's conduct in this regard constituted deliberate indifference to plaintiff's medical needs. (*Id*. at 35-36.) Plaintiff also alleges that on September 16, 2007, when medications were being distributed to inmates, defendant Mease dumped out a glass of water the nurse had given plaintiff to take his medication with. (Dkt. No. 4 at 32.) Plaintiff contends that defendant Mease's conduct constituted deliberate indifference to his medical needs and that the act was undertaken in retaliation for plaintiff filing a previous § 1983 action against him. (*Id*. at 32-33.) Defendants argue that plaintiff has not demonstrated deliberate indifference to a serious medical need nor has he alleged a viable retaliation claim.

Because plaintiff is a pretrial detainee his claims pertaining to inadequate medical care arise under the Due Process Clause of the Fourteenth Amendment. *Carnell v. Grimm*, 74 F.3d 977, 979

REPORT AND RECOMMENDATION
PAGE - 11

(9th Cir. 1996). The Ninth Circuit has made clear that, with respect to medical needs, "the due process clause imposes, at a minimum, the same duty the Eighth Amendment imposes: 'persons in custody ha[ve] the established right to not have officials remain deliberately indifferent to their serious medical needs.'" *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (citing *Carnell*, 74 F.3d at 979.) A medical need is deemed serious if the failure to treat the condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). In order to establish deliberate indifference, a plaintiff must show a purposeful act or failure to act on the part of prison officials. *McGuckin*, 974 F. 2d at 1060.

With respect to plaintiff's claim against defendant Braden, defendants have provided evidence that defendant Braden did not work in plaintiff's housing unit on September 2nd. (Dkt. No. 28 at 1.) They have also provided evidence that plaintiff did, in fact, receive his medication on September 2nd. (Dkt. No. 30 at 3.) Because it appears that the claim against defendant Braden is simply false, that claim should be dismissed.

With respect to plaintiff's claim against defendant Mease, defendants have provided evidence that though defendant Mease did pour out some of the water provided to plaintiff by the nurse, defendant Mease left sufficient water for plaintiff to take his medication. (Dkt. No. 27 at 2.) Plaintiff offers no evidence of his own to rebut that provided by defendant Mease. Moreover, plaintiff does not allege that he suffered any injury as a result of defendant Mease's alleged misconduct. Accordingly, plaintiff has not established a claim of deliberate indifference and defendants' motion for summary judgment should therefore be granted with respect to this claim.

Plaintiff likewise fails to make out a viable claim of retaliation. Defendant Mease states in a declaration submitted in support of defendants' summary judgment motion that during medication pass on September 16, 2007, when plaintiff's pass through was opened to allow the medical staff to

REPORT AND RECOMMENDATION
PAGE - 12

1 provide him with medication, plaintiff threatened that "if you stand too close, I will reach out through
2 the pass through and break your fucking arm!" (Dkt. No. 27 at 1-2.) Defendant Mease also noted
3 that plaintiff had repeatedly thrown urine and feces at staff through the pass through. (*Id*. at 2.) For
4 these reasons, he was concerned about leaving the pass through open for very long and about plaintiff
5 having a large amount of water that he could use to throw at staff. (*Id*.) Defendant Mease therefore
6 poured out some of the water leaving plaintiff enough to take his medication. (*Id*.)

Plaintiff offers no evidence that defendant Mease's actions were in any way connected to plaintiff having filed a previous lawsuit against him. Moreover, there is ample evidence in the record that defendant Mease, in pouring out some of plaintiff's water, was acting in furtherance of legitimate correctional goals. Accordingly, defendant Mease is entitled to summary judgment with respect to plaintiff's retaliation claim as well.

7. <u>Cell Cleaning</u>

Plaintiff alleges that on or about September 2, 2007, defendant Braden dumped two gallons of chemical cleaner into his cell through the pass-through. He contends that defendant Braden's conduct violated his Eighth Amendment rights.

As noted above, defendants have presented evidence that defendant Braden was not working in plaintiff's housing unit on September 2nd. (Dkt. No. 28 at 1.) Assuming plaintiff is mistaken as to the date of the alleged misconduct, defendants have also offered evidence which establishes that the conduct complained of does not implicate federal constitutional concerns. Defendant Braden states in his declaration submitted in support of defendants' summary judgment motion that he recalls having placed diluted Simple Green, an organic cleaner, on the floor outside of plaintiff's cell on occasions when plaintiff had thrown urine and feces out of his cell. (Dkt. No. 28.) Defendant Braden states that the purpose of using the Simple Green in such circumstances was to counteract the odor and the unhealthy exposure created by the urine and feces until it could be cleaned up. (Dkt. No. 28

REPORT AND RECOMMENDATION
PAGE - 13

at 1-2.) Defendant Braden denies ever having thrown anything into plaintiff's cell, but he does concede that it is likely that some of the Simple Green cleaner used outside the cell went into the cell under the door. (*Id*. at 2.) Plaintiff offers no evidence of his own to rebut that presented by defendant Braden. Plaintiff also fails to offer any evidence that he suffered any substantial harm as a result of his exposure to cleaning products which may have inadvertently made their way into his cell. Accordingly, defendant Braden is entitled to summary judgment with respect to plaintiff's cruel and unusual punishment claim.

## CONCLUSION

For the foregoing reasons, this Court recommends that defendants' motion for partial summary judgment be granted and that plaintiff's complaint and this action be dismissed with prejudice as to all claims asserted against defendants Hansen, Anderson, Lamond, Bolzer, Colbert, Gailfus, Mease, and Braden. Plaintiff's excessive force claims alleged against defendants Owens, Stowers and Louis remain for resolution at trial. A proposed order accompanies this Report and Recommendation.

DATED this 20th day of February, 2009.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge